# Exhibit K

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SASHA PIPPENGER, et al.,

                Plaintiffs,

    -against-

United States DOGE Service, et al.,

                Defendants.

**DECLARATION**

### DECLARATION OF JOHN DOE

I, John Doe, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. <u>Personal Background</u>: I am a 44-year-old Libyan national residing in Tripoli, Libya. I live with my wife and our infant daughter. I am currently employed by the United States Institute of Peace (USIP) as a Personal Service Contractor (PSC). I have worked in this capacity for USIP since February 5, 2022. Before the 2011 revolution in Libya, I was a surgeon, but I joined the movement for freedom and was arrested by the Gaddafi regime for my role. After Libya's liberation, I dedicated my life to peacebuilding and to the promotion of the ideals of human rights, working with organizations such as the United Nations and USIP.

2. <u>Professional Role with USIP</u>: As a long-serving representative of USIP in Libya, I am widely known among Libyan civil society, government stakeholders, and international partners as a face and voice of USIP in this country. My work has been integral to a variety of USIP initiatives, including mediation efforts, support for ongoing peace processes, counterterrorism programs, and engagements with local communities affected by violence.

1

3.    <u>USIP's Achievements in Libya</u>: USIP has been in Libya since 2012. Since that time, directly following the U.S.-supported revolution that brought an end to the brutal dictatorship of Muammar Gaddafi, I have been proud to work alongside the Institute. I've seen USIP's efforts firsthand-from facilitating tribal dialogues in the Fezzan region of southern Libya, to mediating between warring armed groups along the Libya-Tunisia border, where transnational criminal activity continues to destabilize the region. Between 2019 and 2021, USIP supported the UN-led Libyan Political Dialogue Forum, including efforts to help reunify national institutions by convening key administrative bodies such as the Central Bank and the Audit Committee. Since 2022, USIP has served as a principal partner in the implementation of the Presidential Council's national reconciliation initiative, providing critical support for building a unified and inclusive peace process. Additionally, beginning in 2023, USIP partnered with the U.S. State Department on counterterrorism.

4.    <u>USIP's Legal Mandate in Libya</u>: USIP operates in Libya under a Memorandum of Understanding with the Libyan Ministry of Foreign Affairs. This agreement both enables and obligates USIP to provide technical and advisory support to national and local peace efforts, including mediation between Libya's divided eastern and western governments and reconciliation efforts among warring local communities. USIP's presence in Libya depends on maintaining the trust of both state and non-state actors, which requires consistent, long-term engagement.

5.    <u>Context of the Libyan Operating Environment</u>: Libya remains in a state of deep political division and armed instability. Armed militias and criminal groups continue to exert influence over daily life and governance. In Tripoli, violent clashes between armed groups occur regularly—often weekly—creating extreme insecurity and unpredictability. The threat of arrest,

kidnapping, extortion, or violence is a constant concern for individuals working with international organizations, particularly when those institutions are perceived to have withdrawn or abandoned their commitments.

6.      <u>Risk of Abrupt Termination of My Contract and USIP Activities</u>: If I am terminated without notice, a structured transition, or the resources needed to responsibly conclude USIP's work become unavailable, my family and I will face immediate danger. USIP's international security team, which previously provided emergency planning and protection, has already been abruptly dismissed, leaving me exposed. The closure of USIP's office in Washington, the mass firing of staff, and the disappearance of leadership—have left local stakeholders in Libya confused, suspicious, and in some cases, angry. I have already been directly targeted with threats. I fear any further disruption will all but ensure harm to me and my family.

7.      <u>Targeting Due to USIP's Abrupt Closure</u>: I wish to emphasize that the danger I face is not solely the result of losing a job. Individuals connected to both government and their affiliated militia groups would target me for USIP's sudden and unexplained withdrawal. The perception that I may be abandoned by the organization I represented has already made me a more vulnerable target, increasing the likelihood of being interrogated, harassed, or accused of bad faith. The lack of any official communication or support from USIP following and its abrupt shutdown will compound the suspicion I face and leave me with no protection.

8.      This concern is not theoretical. In April 2025, Libyan authorities suspended ten foreign NGOs, including Médecins Sans Frontières (MSF), the Norwegian Refugee Council, and the Danish Refugee Council, accusing them of violating national law and undermining Libya's

social fabric through their humanitarian work[1]. These expulsions demonstrate a broader trend of hostility toward foreign organizations. USIP has, until now, avoided this fate due to strong institutional leadership, security infrastructure, and sustained engagement with Libyan authorities. Without these supports, I—along with my family—will be left acutely vulnerable to the same targeting and retaliation.

9.    Family Vulnerability and Humanitarian Need: Beyond the loss of income, the sudden termination of my employment would eliminate our access to housing, healthcare, and other basic necessities. As a father to an infant child and husband to a young mother, I bear the full responsibility for ensuring their safety and well-being. In the current environment, there are no viable alternatives for shelter or medical care without USIP's support. I do not have the financial means or security arrangements to relocate or seek safe refuge within Libya. The prospect of being targeted by armed actors—combined with the inability to meet my family's basic needs—would leave us in an unlivable and life-threatening situation.

10.    Conclusion: For the reasons stated above, I respectfully submit that termination from my position with USIP under the current conditions would cause severe and irreparable harm to me and my family. This harm is not merely financial—it is personal, existential, and rooted in a volatile security context where institutional affiliation and perceived loyalty can mean the difference between safety and persecution. I respectfully request that my employment be extended or transitioned responsibly, with adequate support to ensure my family's survival and safety. As a result of the serious harms that my family and I would face if my identity were to be disclosed, I hope to proceed in this litigation anonymously.

---

[1] Samy Magdy, *Libya Suspends 10 Foreign Aid Groups Over Alleged Migrant Activities*, AP News (Apr. 2, 2025), https://apnews.com/article/aid-groups-libya-authorities-migrants-humanitarian-relief-e3d6cea321411e3e4385b1d46cb787b0.

11.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Executed in Tripoli, Libya on April 9, 2025


/s/ John Doe
_____
JOHN DOE