**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SASHA PIPPENGER, SHIRA LOWINGER, ELIZABETH QUINLAN, CHRIS BOSLEY, CHESTER A. CROCKER, MOHAMED KHALIL ABUZNAD, BRAVE GENERATION, INTERMOTION MEDIA, LLC, PEACE in PRAXIS, LLC, c/o Ali & Lockwood LLP 501 H Street NE, Suite 200 Washington, D.C. 20002 | |
| *Plaintiffs*, | Civil Action No. 1:25-cv-01090 |
| v. | **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| U.S. DOGE SERVICE, 736 Jackson Place, N.W. Washington, D.C. 20503 | |

U.S. DOGE SERVICE,
736 Jackson Place, N.W.
Washington, D.C. 20503

U.S. DOGE SERVICE TEMPORARY
ORGANIZATION,
Eisenhower Executive Office Building
1650 17th St NW
Washington, DC 20500

U.S. OFFICE OF PERSONNEL
MANAGEMENT
1900 E Street, NW
Washington, DC 20415-1000

U.S. GENERAL SERVICES
ADMINISTRATION
1800 F Street, NW
Washington, DC 20405

U.S. DEPARTMENT OF STATE
2201 C St NW
Washington, DC 20451

AMY GLEASON, in her official capacity as the
Acting Administrator of U.S. DOGE Service and
U.S. DOGE Service Temporary Organization,
736 Jackson Place, NW
Washington, D.C. 20503

NATE CAVANAUGH, in his purported official
capacities as acting Chairman and President of the

United States Institute of Peace and employee of
U.S. DOGE Service and U.S. DOGE Service
Temporary Organization,
2301 Constitution Ave., NW
Washington, D.C. 20037

KENNETH JACKSON, in his purported official
capacity as acting president of the United States
Institute of Peace,
1300 Pennsylvania Avenue NW
Washington, D.C. 20004

MARCO RUBIO, in his official capacities as the
U.S. Secretary of State and as an *ex officio*
member of the United States Institute of Peace
Board of Directors,
2301 Constitution Ave., NW
Washington, D.C. 20037

PETE HEGSETH, in his official capacities as the
U.S. Secretary of Defense and an *ex officio*
member of the United States Institute of Peace
Board of Directors,
2301 Constitution Ave., NW
Washington, D.C. 20037

VICE ADMIRAL PETER A. GARVIN, in his
official capacities as President of the National
Defense University and an *ex officio* member of
the United States Institute of Peace Board of
Directors,
2301 Constitution Ave., NW
Washington, D.C. 20037

U.S. INSTITUTE OF PEACE,
2301 Constitution Ave., NW
Washington, D.C. 20037

DONALD J. TRUMP, in his official capacity
as President of the United States of America,
1600 Pennsylvania Avenue NW
Washington, D.C. 20500

and

TRENT MORSE, in his official capacities as
Deputy Director of Presidential Personnel in the
White House Presidential Personnel Office, the
White House Office, and the Executive Office of

the President of the United States,
1600 Pennsylvania Avenue, NW
Washington, D.C. 20500

        *Defendants.*

## INTRODUCTION

1.    The United States Institute of Peace ("USIP") is an independent non-profit organization based in Washington, D.C. that has a purpose of "promot[ing] international peace and the resolution of conflicts among the nations and peoples of the world without recourse to violence." USIP was created via an Act of Congress and organized under the non-profit corporation laws of the District of Columbia. Until March 2025, USIP owned its own $500 million headquarters building in Washington, D.C. and maintained an annual budget of roughly $55 million of Congressionally appropriated funds that it used to develop training and education in the peacebuilding field and resolve violent conflict around the world.

2.    On March 14, 2025, that all changed. In a bizarre series of events that are anathema to how the United States government relates to American civil society, federal government agencies—the Office of Personnel Management ("OPM") and the General Services Administration ("GSA"), the United States DOGE Service ("DOGE"), and the other federal government Defendants in this case broke into USIP's headquarters using agents from the Federal Bureau of Investigation ("FBI") and a leftover skeleton key held by USIP's former security contractor, fired USIP's independent Board of Directors in violation of their statutory removal protections, usurped USIP's Board, and arrested USIP's functioning. Defendants transferred USIP's $500 million building to GSA for no consideration, drained the Endowment of USIP—another independent, legal entity organized under the laws of the District of Columbia—and fired almost all of its employees and contractors, including those working in active warzones abroad.

3.      Plaintiffs in this case—former USIP employees suffering ongoing irreparable harm; a current USIP Personal Services Contractor ("PSC") representing USIP in Libya without protection from USIP's security apparatus, which has been dismantled; a USIP programming partner dedicated to engaging youth in Russia and Ukraine in peace dialogues; USIP vendors who are owed funds from USIP for work that they have performed under lawful contract but have not been paid; and a donor to the Endowment for the USIP, which has been raided by Defendants— ask this Court to stop the bloodletting of USIP and the Endowment for USIP—by issuing a temporary restraining order, enjoining further illegal activities by Defendants, including the now co-opted USIP itself, and vitiating the irreparable, collateral consequences of Defendants' unlawful actions that have no other remedy at law.

JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (action to redress deprivation of rights secured by the Constitution of the United States).

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1).  A substantial part of the events giving rise to the claims herein occurred in this District, Defendants are agencies and officers of the United States sued in their official capacities or independent entities based and/or registered in Washington, D.C., and Plaintiffs Elizabeth Quinlan, Chris Bosley, and Chester A. Crocker reside in this District.

## PARTIES

### *Plaintiffs*

6.      Plaintiff Sasha Pippenger was the Director of Peace Processes at USIP, overseeing the team responsible for international mediation, negotiation, dialogues, ceasefires, and reconciliation, until her employment was terminated on March 28, 2025.

7.      Plaintiff Elizabeth Quinlan served as the Program Officer for Public Engagement and D.C. Partnerships at USIP until her employment was terminated on March 28, 2025.

8.      Plaintiff Chris Bosley was the Acting Director for the Program on Violence and Extremism at USIP until his employment was terminated on March 28, 2025. Plaintiff Bosley is a resident of Washington, D.C.

9.      Plaintiff Shira Lowinger was the Director of Grants and Contracts Administration in the Office of Finance at USIP until her employment was terminated on March 28, 2025.

10.     Plaintiff Mohamed Khalil Abuznad is a Libyan national residing in Tripoli, Libya who is currently employed by USIP as a PSC, where he supports USIP initiatives in that country ranging from mediation, to supporting ongoing peace processes, counterterrorism programs, and engagements with local communities affected by violence. Abuznad was given a termination notice of his contract, effective May 31, 2025.

11.     Plaintiff Chester A. Crocker is a donor to the Endowment of USIP. He is also a retired professor of strategic studies at Georgetown University, a former Assistant Secretary for the Department of State, a former member of the USIP Board of Directors (1992 to 2011), and a former Board Chair of the USIP Board of Directors (1992-2004). Plaintiff Crocker is a resident of Washington, D.C.

12.     Plaintiff Brave Generation is a registered non-profit organization registered in the State of New York working with individuals from Russia, Ukraine, and Belarus on dialogue programming, in partnership with USIP's Center for Russia and Europe.

13.     Plaintiff Peace in Praxis, LLC ("Peace in Praxis") is a limited liability company registered in the State of Maryland that specializes in research, curriculum development, and training design for education, training, and nonprofit clients. It has worked with USIP since 2022, primarily to develop trainings in the peacebuilding field.

14.     Plaintiff InterMotion Media, LLC ("InterMotion") is a production company registered in the State of Virginia that specializes in video content for education, training, and nonprofit clients. InterMotion has served as a contractor for USIP since 2012, primarily producing video content for online training courses in the peacebuilding field.

***Defendants***

15.     Defendant U.S. DOGE Service ("DOGE") is an entity that was created within the Executive Office of the President by Executive Order 14158.

16.     Defendant U.S. DOGE Service Temporary Organization ("DOGE TO") is an entity that was created within the Executive Office of the President by Executive Order 14158.

17.     Defendant Office of Personnel Management ("OPM") is the chief human resources agency and personnel policy manager for the Federal Government, and at all times relevant to this Complaint has facilitated DOGE's unlawful exercise of authority, and *vice versa*.

18.     Defendant General Services Administration ("GSA") is a federal government agency that provides procurement services, manages federal property, and develops government-wide operations policies. At all times relevant to this Complaint, GSA has facilitated DOGE's unlawful exercise of authority, and *vice versa*.

19.     Defendant U.S. Department of State ("DOS") is an executive office of the federal government. At all times relevant to this Complaint, DOS has facilitated DOGE's unlawful exercise of authority, and *vice versa*.

20.     Defendant Amy Gleason is the Acting Administrator of U.S. DOGE Service and U.S. DOGE Service Temporary Organization.

21.     Defendant Nate Cavanaugh is purporting to be the acting president of USIP, and also serves or has served as an employee of GSA and/or DOGE and/or DOGE TO via assignment of GSA.

22.     Defendant Kenneth Jackson, at all relevant times, was purporting to be the acting president of the United States Institute of Peace while also serving as an employee of DOS.

23.     Defendant Marco Rubio is the U.S. Secretary of State and is an *ex officio* member of the USIP Board of Directors.

24.     Defendant Pete Hegseth is the U.S. Secretary of Defense and is an *ex officio* member of the USIP Board of Directors.

25.     Defendant Vice Admiral Peter A. Garvin is the President of the National Defense University and is an *ex officio* member of the USIP Board of Directors.

26.     Defendant Donald J. Trump is the President of the United States.

27.     Defendant Trent Morse is the Deputy Director of Presidential Personnel in the White House Presidential Personnel Office, the White House Office, and the Executive Office of the President of the United States.

28.     Defendant United States Institute of Peace is an independent, non-profit corporation created by Congress in 1984 that has been coopted, as of March 14, 2025, by the other Defendants as alleged in this Complaint.

29.    Defendant Endowment of the United States Institute for Peace is a 501(c)(3) non-profit organization registered in Washington, D.C. that was mandated by Congress and created by USIP to support USIP's fulfilling its Congressional mandate, and which has been coopted, as of March 14, 2025, by the other Defendants as alleged in this Complaint.

30.    For the purpose of this Complaint, all references to "DOGE" are inclusive of U.S. DOGE Service, DOGE TO, OPM, GSA, and DOS to the extent they are acting in concert.

## JURY DEMAND

31.    Plaintiffs hereby demand a jury trial as to all matters properly triable by jury.

## FACTUAL ALLEGATIONS

### *Structure, Powers, and Functions of USIP*

32.    USIP is an independent nonprofit corporation created by Congress in 1984 via the United States Institute of Peace Act ("USIP Act") to promote peaceful conflict resolution worldwide. 22 U.S.C. § 4601, et seq.

33.    The purpose of USIP is to

> serve the people and the Government through the widest possible range of education and training, basic and applied research opportunities, and peace information services on the means to promote international peace and the resolution of conflicts among the nations and peoples of the world without recourse to violence.

*Id.* § 4601(b).

34.    Prior to the unlawful conduct at issue here, USIP employed roughly 300 employees with an annual operating budget of roughly $55 million through Congressional appropriations, and contracted with PSCs and vendors around the world in furtherance of its global mission.

35.    USIP acts through a Board of Directors (the "Board") to advance the purpose of the USIP through a variety of discretionary activities directed by the Board, such as supporting scholarly inquiry on international peace and conflict resolution, developing publications,

establishing a clearinghouse for storing information from the field of peace learning, and creating one or more legal entities organized under the laws of the District of Columbia to support its purposes.

36.    The powers and duties of USIP are, to the extent consistent with the USIP Act, "the powers conferred upon a nonprofit corporation by the District of Columbia Nonprofit Corporation Act," Pub. L. No. 87-569, 17 Stat. 265, 268 (Aug. 6, 1962), with the exception of section 5(o) of the District of Columbia Nonprofit Corporation Act.

37.    Because USIP does not have the power conferred under section 5(o) of that Act, USIP cannot, on its own or through its officers, "cease its corporate activities" or dissolve itself.

38.    In 2020, Congress passed and President Donald J. Trump signed into law the "Gandhi-King Scholarly Exchange Initiative Act," which obligates USIP to create and maintain "a professional development training initiative." Congress mandated that: "The president and chief executive officer of the United States Institute of Peace *shall create* a professional development training initiative on conflict resolution tools based on the principles of nonviolence."

39.    Congress enumerated four statutorily mandated activities of the Academy, and expressly prohibited USIP from contracting out this work to other entities.

40.    The USIP Act makes clear that USIP is a non-governmental entity.

41.    USIP functions as a non-governmental entity. For example, USIP:

   a.  Maintains (or at least maintained) a ".org" domain and not ".gov" for its official website.

   b.  Has independent discretion as to whether it responds to "the request of a department or agency of the United States Government to examine, study, and report on any issue [], 22 U.S.C. § 4604(e);

   c.  Has independent discretion to enter into personal services and other contracts, 22 U.S.C. § 4604(f);

d. Is authorized by law to direct unobligated appropriated funds to its Endowment and spend them "without regard to fiscal year limitations, 22 U.S.C. § 4609(b);

e. Maintains its own private auditor, 22 U.S.C. § 4607;

f. May sue and be sued, 22 U.S.C. § 4604(k);

g. Has power over its land;[1]

h. Built its own Washington, D.C. headquarters building, a $500 million asset, with privately raised funds;

i. Pays its employees via a private payroll provider;

j. Maintains its own procurement, grant, and contracting policies that are distinct from the uniform federal policies applicable to the Executive Branch;

k. Does not use Office of Personnel Management forms to mark personnel actions because its employees are not employed by the federal government; and

l. Does not offer its employees any of the suite of benefits associated with employment in federal agencies, such as the Federal Employee Health Benefits, Federal Employee Retirement System, Thrift Savings Program, and federal travel benefits (such as the General Services Administration City Pair Program negotiated airfares).

42. However, USIP is subject to FOIA, has grant-making authority with public funds, 22 U.S.C. §§ 4603(c), 4604(b)(1), (d), 4606(b); is tasked with making reports to Congress, *id.* § 4604(c)(3); may obtain services from the General Services Administration, *id.* § 4604(o), receives annual Congressional appropriations, and may access classified materials. 22 U.S.C. § 4603 (e).

43. That Congress expressly enumerated these functions and powers distinguishes USIP from other federal agencies, for which these functions and powers are assumed and therefore not enumerated.

---

[1] Pub. L. 104-201 § 2831 (giving the USIP administrative jurisdiction—effectively a permanent rent-free tenancy—over three acres); Pub. L. 109-364 § 2842 (giving USIP administrative jurisdiction over an additional acre, including two buildings that were subsequently renovated and renamed the Bush and Clinton Buildings).

*The USIP Board of Directors*

44.     USIP has a 15-member bipartisan Board of Directors. By statute, not more than eight members of the Board may be from the same political party. 22 U.S.C. § 4605(c).

45.     Twelve members of the Board are appointed to the Board by the President of the United States following confirmation by the United States Senate. *See* 22 U.S.C. § 4605(b)(4). None of these 12 Board members can simultaneously serve as Government officials, and all must have commensurate practical or academic experience in peace and conflict resolution efforts. *Id.* § 4605(b), (d).

46.     Three Board members are *ex officio* members: the Secretary of State, Secretary of Defense, and the president of the National Defense University—or their United States Senate-confirmed designee. Each *ex officio* member of the Board serves in their role at the pleasure of the President.

47.     One member of the non-*ex officio* Board members is elected by the other non-*ex officio* members to serve a three-year term as Chairman of the Board.

48.     The Board may appoint a president of USIP, who is to oversee the day-to-day administration of the affairs of USIP and serve as a non-voting *ex officio* member of the Board.

*Board Member Removal*

49.     The 12 non-*ex officio* Board members can only be removed from their positions in one of three ways. *See* 22 U.S.C. § 4605 (b), (d), (f)

50.     First, the President may remove them "in consultation with the Board, for conviction of a felony, malfeasance in office, persistent neglect of duties, or inability to discharge duties."

51.     Second, "the President may remove them upon the recommendation of eight voting members of the Board . . . pursuant to action taken at a meeting of the Board."

52.     Third, they may be removed "upon the recommendation of a majority of the members of the Committee on Foreign Affairs and the Committee on Education and Labor of the House of Representatives and a majority of the members of the Committee on Foreign Relations and the Committee on Labor and Human Resources of the Senate."

***The United States DOGE Service***

53.     After assuming office on January 20, 2025, President Trump issued Executive Order 14158 entitled "Establishing and Implementing the President's 'Department of Government Efficiency,'" (the "DOGE EO"). Section one of the DOGE EO states that its purpose is to "establish[] the Department of Government Efficiency to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity."

54.     The DOGE EO further establishes an Administrator reporting to the White House Chief of Staff, and establishes the "U.S. DOGE Service Temporary Organization," ("DOGE TO") headed by the Administrator. DOGE EO, Section 3(b).

55.     On February 11, 2025, President Trump issued Executive Order 14210 that lays out DOGE's role in "eliminating waste, bloat, and insularity" and its mandate to work with agency heads to create and implement hiring plans, including anointing DOGE with the power to decide which vacancies should be filled. The DOGE TO Administrator is obligated to "submit a report to the President regarding implementation of this order, including a recommendation as to whether any of its provisions should be extended, modified, or terminated."

56.     The White House publicly announced that Amy Gleason is the Acting Administrator of DOGE and/or DOGE TO.

57.     As of February 19, 2025, DOGE had at least 34 employees, of which 20 are listed as being at the Executive Office of the President and the remaining 14 staffers are listed as working at various federal agencies.

58.     Defendant Nate Cavanaugh—a 28-year-old tech entrepreneur with no prior government service and no experience in the field of peacebuilding, and the purported current president of USIP—has been widely reported to be employed by and working at the behest of GSA, OPM, and DOGE.

59.     DOGE has an operating budget of $14.4 million. DOGE has established a website with a .gov URL (https://doge.gov/) that includes the header "An official website of the United States government" and an X account (@DOGE)), both of which are used to promote its work, findings, and actions, such as cancelling contracts and grants.

### DOGE Has a Track Record of Attempting to Shutter Governmental and Non-Governmental Agencies and Institutions in Violation of Law

60.     In implementing President Trump's Executive Orders pertaining to the size of the federal government, DOGE—facilitated by OPM and GSA—has begun systematically dismantling and dissolving governmental and non-governmental agencies and institutions that receive public funds.

61.     According to public reporting, DOGE is "exercising significant authority by directing agencies to implement various policies, superintending personnel decisions purporting to close federal agencies, acquiring access to sensitive databases, and threatening agency officials who fail to comply."[2]

---

[2] "Challenging DOGE," Governing for Impact, Feb. 2025, https://governingforimpact.org/wp-content/uploads/2025/02/Challenging-DOGEPrimer-final.pdf.

62.     In the span of one month, for example, DOGE took over the Office of Personnel Management,[3] contributed to a humanitarian crisis and the loss of 50,000 jobs by unlawfully attempting to shutter the Congressionally-authorized U.S. Agency for International Development, and touted its success in cancelling $1 billion in contracts across 25 agencies and cutting $900 million in education funding.[4]

63.     On February 19, 2025, President Trump signed Executive Order 14217. The stated purpose of the Executive Order is to "reduce the size of the Federal Government," with "a reduction in the elements . . . that the President has determined are unnecessary." The Executive Order lists federal entities that "shall be eliminated to the maximum extent consistent with applicable law, and such entities shall reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law."

64.     The Executive Order names the Institute as one of the entities purportedly covered by the order. Other listed entities included the Inter-American Foundation ("IAF") and the U.S. African Development Foundation ("USADF").

65.     On March 4, 2025, DOGE announced that it had reduced IAF, an entity with a $60 million operating budget, to its statutory minimum: one employee.

---

[3] Will Steakin & Laura Romero, OPM, implementing Musk's DOGE plans, sends federal workers 2nd 'Fork in the Road' email, ABC News (Feb. 3, 2025), https://abcnews.go.com/US/opm-implementing-musks-doge-plans-sends-federalworkers/story?id=118401375; Chas Danner, All the Federal Agencies DOGE Has Gotten Access To, NY Mag. (Feb. 10, 2025), https://nymag.com/intelligencer/article/doge-elon-musk-whatfederal-agencies-access-lawsuits.html.

[4] Charles Creitz, DOGE announces more than $1B in savings after canceling 104 federal DEI contracts, FOX News (Jan. 31, 2025), https://www.foxnews.com/politics/doge-announces-morethan-1b-savings-after-canceling-104-federal-dei-contracts; Savings, Dep't of Gov't Efficiency, https://www.doge.gov/savings (last visited Feb. 19, 2025); Zach Montague & Dana Goldstein, Musk Team Announces Millions in Cuts to Education Dept. Amid Legal Pushback, N.Y. Times (Feb. 11, 2025)

***Defendants Move to Shutter USIP***

66.     On February 20, the day after issuance of EO 14217, a representative of DOGE contacted USIP. On February 24, Ambassador George Moose, acting president of USIP, and USIP's outside counsel, met virtually with DOGE representatives, including Defendant Nate Cavanaugh.

67.     The DOGE representatives erroneously asserted that the only statutory requirements of USIP are the existence of its Board, the appointment of a president, the payment of incidental expenses for the Board, and the submission of certain reports to Congress and the Executive Branch.

68.     On or about March 14, 2025, USIP's Board of Directors had 14 members: the three *ex officio* members under 22 U.S.C. § 4605(b)(1)-(3), and eleven members who had been appointed with the advice and consent of the Senate pursuant to 22 U.S.C. § 4605(b)(4).

69.     On or about March 14, 2025, Defendant Trent Morse of the White House Presidential Personnel Office purported to fire, via email—under the authority of Defendant President Donald J. Trump—ten members of the Board of Directors (the eleventh Board member resigned prior to this unlawful firing)—other than the three serving *ex officio*.

70.     The termination emails did not state any justification and violated the removal protections afforded to Board members under the USIP Act.

71.     Because members of the Board were unlawfully removed by the President, all subsequent actions by the remaining *ex officio* members and Defendant Cavanaugh are *ultra vires* and *void ab initio*, including all employment terminations, contract cancellations, and the cessation of services.

72.    Following this unlawful removal, only three Board members remained: Defendants Secretary of State Marco Rubio, Secretary of Defense Pete Hegseth, and President of the National Defense University Peter Garvin—all of whom possess their Board seats via service in other positions in the federal government at the pleasure of the President.

73.    Also on March 14, 2025, representatives from GSA and/or DOGE and Defendant Kenneth Jackson appeared at USIP headquarters building requesting access. USIP representatives denied them entry.

74.    Later that same evening, Defendants Cavanaugh and other DOGE personnel returned to USIP headquarters accompanied by FBI Special Agents and presented George Foote, counsel to USIP, with a "resolution" signed by the three *ex* officio members of the Board purporting to remove George Moose from his position as acting president of USIP.

75.    On March 17, 2025, at approximately 2:30 p.m., four employees of Inter-Con Security Systems Inc. ("Inter-Con"), USIP's former security contractor, arrived at USIP headquarters at the behest of DOGE and/or DOGE TO.

76.    Inter-Con had been told by GSA and/or DOGE employees that every federal contract Inter-Con held would be cancelled if they did not let Defendant Jackson into the building.

77.    Inter-Con employees were unable to enter the building because their badges had been deactivated upon suspension of USIP's contract with Inter-Con.

78.    Upon their failed entry, another Inter-Con employee arrived with a physical key that USIP had not yet confiscated, and used this key to enter USIP headquarters and let other Inter-Con employees in.

79.    After entering the headquarters building, the Inter-Con employees were advised by USIP staff on-site that they were trespassing. Nevertheless, they continued toward USIP's gun

safe, at which point Mr. Foote contacted the Washington, D.C. Metropolitan Police Department (the "MPD") to report the unlawful intrusion.

80.     When MPD officers arrived, they forcibly entered the building, allowing DOGE and DOGE TO employees to gain unlawful access and begin expelling everyone from the building, including acting president Moose, USIP staff, and outside counsel Mr. Foote.

81.     That same day, Anna Kelly, Deputy White House Press Secretary, posted on X in response to a different message on X with a purported quote from George Moose, president and CEO of USIP that "DOGE has broken into our building":



82.     Accompanying Ms. Kelly's message was an image of the undated purported "resolution" of the Rubio-Hegseth-Garvin Board of Directors to terminate Moose and appoint Defendant Jackson. At the time, Defendant Jackson also held a position at USAID where he was leading DOGE's efforts to dismantle the agency.

83.     On or about March 18, 2025, DOGE and/or DOGE TO employees started physical destruction of the USIP building, including tearing the USIP seal off the wall and breaking it into pieces, and shredding hard copy documents.

84.     The same day, USIP employees learned that DOGE employees could access all systems, computers, and phones.

85.     Later that day, some USIP employees were alerted that DOGE representatives were sending email messages from USIP email addresses to contractors and program partners on behalf of USIP program staff.

86.     When USIP staff lost access to their accounts, they simultaneously lost access to a virtual private network that allowed staff to connect to USIP's financial management system, and thereby their ability to conduct business on behalf of USIP, including paying invoices submitted by USIP contractors.

87.     Around this time, USIP had roughly 792 open contracts, orders, or task orders, with total obligations of approximately $65.7 million. These contractors were located in over 63 countries. As of March 21, 2025, USIP had issued roughly 56 advances that combined equaled $1,482,535.57.

88.     On March 19, 2024, Karoline Leavitt, White House Press Secretary, responded to a question asked during a White House press conference about DOGE's forced entry into USIP's headquarters. She responded as follows:

> ***We were made aware of this story by individuals at DOGE, Elon Musk's team,*** and also at the State Department, who were unable to access this building. [And it] became very clear that there was a concerted effort among the rogue bureaucrats at the United States Institute of Peace to actually physically barricade themselves, essentially, inside of the building ***to prevent political appointees of this administration***, who work at the direction of the President of the United States, to get into the building.

89.    On Friday, March 21, all USIP employees were instructed via personal email and/or messaging applications to personal phones to submit their timesheets for the pay period no later than 5:00 p.m.

90.    On or about March 25, 2025, a document containing a list of all employees and PSCs working in country offices, including personally identifiable information, was circulated to the unsecured personal email addresses of 12 USIP staff members, including country directors and their respective center vice presidents.

91.    Several of the staff members whose personally identifiable information was disclosed in this document are from, live, or work in countries where they would be at risk of physical harm, including arbitrary arrest, detention, and/or torture, for being associated with the USIP. These staff were directed to identify a location to which they could safely relocate themselves by April 9, 2025. Employees and PSCs working in country offices were directed to submit their relocation plans two days later, by Thursday, March 27, 2025.

92.    Later that same day, Justin Fox, a GSA employee deployed by and through the unlawful authority of DOGE, sent an email indicating that all staff should begin taking operational steps to close offices and programs, including ending of and residential leases, and "should operate under the assumption that any program exclusive to USIP will begin wind-down on April 9th."

93.     On or about March 21, 2025, Defendant Jackson purported to fire at least six USIP employees, all of whom had been present at headquarters and involved in preventing DOGE's entry into the building on both March 14 and March 17.

94.     On or about March 25, by a resolution of two of the three *ex officio* Board members, Mr. Jackson ended his purported position as acting president of USIP and Nate Cavanaugh was named in his stead.

95.     Two of the three *ex officio* Board members, Defendants Rubio and Hegseth, also signed a resolution removing Endowment officers and instructing the newly appointed head to transfer all Endowment assets to USIP.

96.     Following his appointment as acting president of USIP, Defendant Cavanaugh sent a letter to GSA requesting that GSA "accept transfer of excess property[,]" USIP's headquarters—a $500 million building that USIP, and USIP alone, had built with private donations and owned—for less than the property's fair market value.

97.     Defendant Cavanaugh also communicated that USIP would be "capable" of advanc[ing] the history, science, art, and practice of international peace and the resolution of conflicts among nations without the use of violence" without the ownership of a large and expensive building. 22 U.S.C. § 4601(a)(9). He also stated that USIP's obligations still included those set forth in § 4604(b)(1)-(10).

98.     Prior to Defendant Cavanaugh's unauthorized and unlawful transfer of the building, USIP had been the lawful owner of the headquarters building, which was built by private contractors engaged by USIP and paid for by a combination of special appropriations and private gifts, as authorized by 22 U.S.C. § 4604(h)(3)(A).

*Mass-Firings Begin on March 28, 2025*

99.    Beginning around 9:00 pm on Friday, March 28, 2025, Plaintiffs and other USIP employees began receiving termination letters via their personal email addresses.

100.    The termination emails stated: "This letter is to inform you of a change in your employment status with United State [sic] Institute of Peace. Effective March 28, 2025, your employment with us will conclude. We understand that this is a significant change, and we are committed to supporting you through the offboarding process. Please see the attached USIP Staff Exit Checklist and send your signed agreement to HumanResources@usip.org."

101.    Attached to each email was a document titled, "Separation Agreement and Release of Claims" dated March 28, 2025 ("the Letter"). The Letter was sent, unsigned, by Mirna Rivas as "Acting President of Human Resources."

102.    The Letter stated that employees were terminated from their positions "[at] the direction of the President of the United States Institute of Peace" and that employees would receive on or around April 11, 2025 all unpaid wages and accrued, unused annual leave. Additionally, employee healthcare benefits would end on March 31, 2025, less than one business day after notice of termination, with the option to continue benefits at the employee's expense pursuant to the Consolidated Omnibus Reconciliation Act ("COBRA").

103.    No mention was made as to the impact of termination on other USIP benefits, such as flexible spending accounts, health spending accounts, or retirement accounts.

104.    No date was provided for returning the signed Letter, except for those employees aged 40 or older who were asked to return the letter within 21 days, thereby releasing their right to an additional 24 days of review pursuant to the Older Workers Benefit Protection Act in the event of a group layoff.

105.    By midnight on March 28, 2025, at least 265 USIP employees had been terminated.

106.    This included all 33 employees of the Gandhi-King Global Academy ("GKGA"), as well as almost all contracting staff and others responsible for essential programming functions and oversight. Additional PSCs affiliated with the GKGA were terminated on March 31, 2025.

107.    On or about midnight, March 28, 2025, USIP employees received their paychecks for work performed under the previous pay period starting March 9, 2025, and ending March 22, 2025.

***DOGE Defendants Continue to Dissolve All USIP Programs and Funding***

108.    On March 29, 2025, hours after the now co-opted, DOGE-Rubio-Hegseth-Garvin-Cavanaugh-controlled USIP terminated the employment of hundreds of USIP employees, Anna Kelly, Deputy White House Press Secretary, told CBS News via written statement:

> Taxpayers don't want to spend $50 million per year on a publicly-funded "research institute" that has failed to deliver peace. President Trump ended the era of forever wars and established peace in his first term, and he is carrying out his mandate to eliminate bloat and save taxpayer dollars.[5]

109.    On March 31, 2025, the official DOGE X account posted:

---

[5] https://www.cbsnews.com/news/us-institute-of-peace-staff-termination-notices/.



110.    Contrary to Defendant DOGE's suggestion that USIP's actions were improper, USIP is authorized to move Congressionally appropriated funds to the Endowment at the end of every fiscal year pursuant to 22 U.S.C. 4609(b).

111.    The March 31, 2025 DOGE message also posted a list of four USIP contracts that had purportedly been cancelled, including one that identified a former member of the Taliban who was working to advance USIP's peacebuilding efforts in Afghanistan. Public disclosure of this information has exposed this contractor to the world as working for USIP and led to death threats against him and his family has been harassed within Afghanistan.

112.    On April 1, 2025, the official DOGE X account posted, in reference to the March 31, 2025 USIP X message: "Update: the $13M in taxpayer dollars has been returned to the Treasury."



113.    Defendant DOGE, and DOGE-co-opted Defendant USIP, have made clear the intent to shutter USIP permanently, leaving USIP unable to implement any of its programs or statutorily mandated functions.

114.    Since GSA/DOGE employee Justin Fox first informed field staff that all programming would be closing down on April 9, DOGE has continued to communicate further wind-downs through the end of May.

115.    On April 12, 2025, all Vice Presidents who had not been fired on March 28 received termination notices effective April 18. These Vice Presidents oversee USIP's field offices, which will remain open until the end of May. These termination notices effectively leave field offices, field staff, and PSCs without any headquarter supervision or security.

116.    Summary and surprise termination of all of USIP contracting staff makes it impossible for USIP to conduct thorough and proper reconciliation between these advances and the deliverables received to ensure taxpayers funds were spent properly.

117.    On March 18, 2025, DOGE terminated USIP's access to the international payment modality of the Department of Treasury International Treasury Service and terminated USIP's ability to transfer funds from the U.S. Treasury to its bank account.

118. On March 20, 2025, Defendant Cavanaugh directed the then-CFO Allison Blotzker to make Defendant Jackson the sole signatory of the Endowment's bank accounts.

119. On March 24, Defendant Jackson denied the then-CFO Blotzker from requesting to apportion USIP's appropriated funds from the Office of Management and Budget for fiscal year 2025.

120. On March 24, Defendant Jackson also denied the then-CFO Blotzker's request to restore employee access to transfer payroll funds. Defendants fired Blotzer on March 25, 2025.

***Plaintiffs Will Suffer Immediate and Irreparable Harm Due to Defendants' Violations of Law***

121. Plaintiff Sasha Pippenger was the Director of Peace Processes at USIP until her employment was terminated on March 28, 2025. Plaintiff Pippenger has been diagnosed with ankylosing spondylitis, a serious and incurable autoimmune disease that requires a costly drug infusion treatment every six weeks without lapses.

122. Plaintiff Quinlan served as the Program Officer for Public Engagement and D.C. Partnerships at USIP until her employment was terminated on March 28, 2025. Plaintiff Quinlan has been diagnosed with a Chiari I malformation in her brain, which, if left untreated, can result in permanent neurological damage.

123. Plaintiffs Pippenger and Quinlan, along with other former employees and their families who have relied on USIP health insurance, are at imminent risk of dire, long-term health consequences as a result of the Defendants' abrupt termination of health insurance and complete lack of communication regarding alternatives. Defendants' unlawful conduct has caused Ms. Quinlan to forego critical and urgent medical testing and treatment, which she will continue to have to forego absent reinstatement and return of her health insurance coverage.

124.     Plaintiff Bosley was the Acting Director for the Program on Violence and Extremism at USIP until his employment was terminated on March 28, 2025. Mr. Bosley relied on existing USIP policies & practices related to termination and severance when deciding to start the process of having a baby with his spouse via surrogacy. Having been abruptly terminated with no notice or severance, he cannot be sure of his ability to move forward with surrogacy.

125.     Defendants DOGE and DOGE-co-opted Defendant USIP, have taken significant steps towards permanently dissolving USIP, and as a result, Plaintiffs Pippenger, Quinlan, and Bosley, and all other terminated employees, will lose the ability to participate in USIP's COBRA health insurance coverage.

126.     Plaintiff Mohamed Khalil Abuznad is a Libyan national residing in Tripoli, Libya who is currently employed by USIP as a PSC. Abuznad faces imminent and irreparable harms should his contract be abruptly terminated or his name publicized, as DOGE has done for another USIP contractor. Abuznad has already lost access to security protections—DOGE had cancelled the security services team contract. On April 11, Abuznad received a termination notice of his contract, effective May 31, 2025. The imminent termination of his contract will expose him to additional personal risk, leaving Abuznad and his family vulnerable to targeting and retaliation, including death threats.

127.     Plaintiff Brave Generation, a non-profit entity that partners with USIP's Center for Russia and Europe on dialogues, trusted USIP and its employees to maintain secure and confidential data management protocols. Brave Generation participants and their families in Ukraine and Russia could face serious, irreparable harms should their participation in peace dialogues be disclosed, which is imminently likely due to DOGE's seizure of communications and

data at USIP—DOGE has already leaked confidential information about grantees and continues to do so.

128.    Plaintiff Crocker is a donor to the Endowment of USIP, who specifically pledged money to USIP for supporting a permanent named conference room at USIP headquarters and peacebuilding activities on campus. His donation has now been co-opted by DOGE and the DOGE-Rubio-Hegseth-Cavanaugh-controlled USIP and Endowment for USIP, and his contributions have not been used consistent with the lawful purposes of such donations. This co-option is contrary to his intent and the conditions of his donations, and he fears that the impact of his donation—supporting USIP's mission—will be permanently lost if DOGE continues to transfer assets from the Endowment. He suffers reputational harm from Defendants' ongoing, baseless maligning of USIP.

129.    Plaintiffs InterMotion, LLC and Peace in Praxis, LLC, both contractors of USIP, are owed money by USIP for work done pursuant to lawful contract, and, despite their best efforts, have been unable to collect. If USIP is shuttered, they will lose the ability to obtain recompense for work already performed. USIP's breach of contract and failure to provide required notice of cancellation of contract also poses imminent reputational and business harms to USIP contractors, many of whom are small businesses and are unable to pay subcontractors.

130.    Plaintiff Shira Lowinger was the Director of Grants and Contracts Administration in the Office of Finance at USIP until her employment was terminated on March 28, 2025, and attests to the serious and myriad harms caused by the abrupt cancellation of hundreds of USIP contracts around the world, including in active warzones. The abrupt decision to terminate the majority of USIP employees and contractors, and to cancel contracts without notice or final payment, is extremely harmful to USIP and its personnel, and has resulted in irreparable

consequences for USIP's operations, legal protections, and the safety and financial security of USIP's employees, contractors, and research subjects.

131.    If USIP is shuttered, Plaintiffs Pippenger, Quinlan, Bosley, Lowinger, and others, will have no other remedy at law for redress of Defendants' illegal actions that caused termination of their employment.

132.    All Plaintiffs who are currently employed by or have been terminated by Defendants suffer the reputational harm of being baselessly maligned by Defendants on X and in the media as "rogue" and wasteful bureaucrats defying the United States Government and the taxpayer's expense.

133.    Further delay in reinstating terminated employees and PSCs will irreparably harm them—they have been left without income and many will be forced to seek other employment to make up for this loss.

134.    The Defendants' actions will also prevent any possibility that USIP as an independent entity can survive—employee-Plaintiffs and others similarly situated are skilled professionals with decades of experience carrying out USIP's mission. They cannot, without income and attendant benefits, wait for litigation to play out for years while Defendants have clearly shown they are capable of dissolve USIP in a matter of weeks.

## FIRST CAUSE OF ACTION
### *Ultra Vires* Action in Violation of 22 U.S.C. § 4605(f) and Violation of U.S. Const. Art II, § 3
### (Against Defendants President Donald J. Trump and
### Trent Morse in their official capacities)

135.    Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as if fully set forth here.

136.    Under the USIP Act, Congress established USIP as an independent nonprofit corporation governed by a Board of Directors.  22 U.S.C. § 4603(b), § 4605(a).

137.    The USIP Act set out the exclusive methods and circumstances under which a member of the Board appointed with the advice and consent of the Senate under 22 U.S.C. § 4605(b)(4) may be removed.  22 U.S.C. § 4605(f).

138.    The notices emailed to such Board members by Defendant Trent Morse on behalf of President Trump purporting to terminate the Board members did not satisfy any of the methods or bases for removal in 22 U.S.C. § 4605(f).

139.    President Trump failed to comply with 22 U.S.C. § 4605(f)(1) by purporting to terminate members of the Board without "consult[ing] with the Board" and without identifying any "conviction of a felony, malfeasance in office, persistent neglect of duties, or inability to discharge duties." 22 U.S.C. § 4605(f)(1).

140.    President Trump exceeded his authority pursuant to 22 U.S.C. § 4605(f)(2) by purporting to remove the members of the Board without "the recommendation of eight voting members of the Board."

141.    President Trump exceeded his authority pursuant to 22 U.S.C. § 4605(f)(3) by purporting to remove the members of the Board without "the recommendation of a majority of the members of the Committee on Foreign Affairs and the Committee on Education and Labor of the House of Representatives and a majority of the members of the Committee on Foreign Relations and the Committee on Labor and Human Resources of the Senate [now the HELP Committee]".

142.    Accordingly, President Trump's actions to remove the members of USIP's Board are unlawful, *ultra vires*, and without legal effect, and have caused Plaintiffs to suffer and continue to suffer imminent and irreparable harm.

143.    Defendant Donald J. Trump's *ultra vires* act also violates Art II, § 3 of the United

States Constitution. The Take Care Clause provides that the Executive must "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3. The Executive violates the Take Care Clause where it fails to execute or otherwise acts contrary to statutes enacted by Congress and signed into law.

144.    Defendant Trump's unlawful removal of the Board members runs afoul of the Constitution's command that the Executive faithfully execute federal law.

## SECOND CAUSE OF ACTION
### Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)
### (Against Defendants GSA, OPM, DOS, DOGE, and DOGE TO)

145.    Plaintiffs repeat, reallege, and incorporate the allegations in the paragraphs above as though fully set forth herein.

146.    Under the Administrative Procedure Act ("APA"), this Court is empowered to "hold unlawful and set aside agency action, findings, and conclusions found to be": (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; (2) "contrary to constitutional right, power, privilege, or immunity"; (3) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; or (4) "without observance of procedure required by law." 5 U.S.C. § 706(2).

147.    DOGE is an agency subject to the APA.

148.    DOGE violated the APA when it forced entry into USIP's privately-owned headquarters, seized USIP's assets without consideration, including its $500 million headquarters, and destroyed USIP's records for the purpose of harming USIP, its employees, and other constituents.

149.    DOGE's actions constitute "final agency action[s] for which there is no other adequate remedy." 5 U.S.C. § 704.

150.    DOGE's actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

151.    DOGE has no legitimate rationale or reasoned analysis that justifies the agency and its employees to muster private security contractors or engage law enforcement to forcibly enter a building owned and occupied by an independent non-profit corporation, or to seize control and possession of the building and all physical property therein.

152.    DOGE's decision to seize and permanently transfer ownership of USIP headquarters and the decision to seize and permanently transfer USIP Endowment assets is substantively unreasonable, DOGE has offered no legitimate rationale for its conduct, and DOGE has failed to consider Plaintiffs' reliance interests and the assets required for USIP to perform its statutorily mandated functions.

153.    To date, DOGE's expressed rationales for its misdeeds have been pretextual and unsupported by any reasoned analysis, and do not render lawful support for Defendants' conduct.

154.    DOGE's actions have caused Plaintiffs to suffer and continue to suffer imminent and irreparable harm.

155.    As a result of DOGE's final agency action, Plaintiffs have suffered and continue to suffer irreparable harm.

**THIRD CAUSE OF ACTION**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)**
**(Against Defendants GSA, OPM, DOS, DOGE, DOGE TO, and USIP)**

156.    Plaintiffs repeat, reallege, and incorporate the allegations in the paragraphs above as though fully set forth herein.

157.    Under the APA, this Court is empowered to "hold unlawful and set aside agency

action, findings, and conclusions found to be": (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; (2) "contrary to constitutional right, power, privilege, or immunity"; (3) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; or (4) "without observance of procedure required by law." 5 U.S.C. § 706(2).

158.    DOGE is an agency subject to the APA.

159.    In the alternative, USIP is an agency subject to the APA.

160.    Individually and collectively, the decision to effectively dismantle USIP by DOGE and/or the DOGE-co-opted USIP constitutes "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704.

161.    DOGE and/or USIP have violated 5 U.S.C. § 706(2) in the following ways:

162.    *First,* these Defendants' actions, individually and collectively, are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

163.    Defendants have given no legitimate explanation for their decision to dismantle USIP by (1) summary removal of its Board members; (2) terminating over 250 employees, (3) terminating benefits, (4) abruptly cancelling contracts with ineffective notice, (5) threatening to wind-down all international programs and grants and terminate all overseas personal service contractors, (6) dissolving the Gandhi-King Global Academy, and (7) shutting down the USIP website and render inaccessible all electronic resources.

164.    The absence of "reasoned analysis" accompanying Defendants' actions render them arbitrary and capricious. Defendants have also failed to consider the reliance interests of Plaintiffs, and have offered no legitimate rationale for the decision to shutter USIP and the conduct taken in furtherance of that act.

165.    Despite the fact that Defendant Cavanaugh has expressly confirmed that USIP is still responsible for its mandate pursuant to 22 U.S.C. § 4601(a)(9), as well as the obligations enumerated in § 4604(b)(1)-(10), Defendant DOGE/DOGE TO has eviscerated all internal systems and processes, terminated all employees with relevant training and experience, and has left no mechanisms in place to implement programs or manage contracts.

166.    To date, Defendants' expressed rationales for their misdeeds have been either pretextual and/or lacking any reasoned analysis, and do not render support for Defendants' unlawful conduct.

167.    *Second*, the final decision of Defendant DOGE and/or the DOGE-co-opted USIP to effectively shutter USIP is "not in accordance with law" and is "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C).

168.    Congress established USIP via the USIP Act, which expressly withholds from USIP the power to "cease its corporate activities" or dissolve itself, incorporating by reference the District of Columbia Nonprofit Corporation Act. 22 U.S.C. § 4603(b); *id.* § 4604(a) (all powers except section 5(o) of the District of Columbia Nonprofit Corporation Act); Pub. L. No. 87-569, 17 Stat. 265, 268 (Aug. 6, 1962).

169.    The actions of Defendant DOGE and Defendant USIP to dismantle USIP violate this statutory mandate.

170.    Further, the Gandhi-King Act mandates that USIP establish and operate the Gandhi-King Global Academy, "a professional development training initiative on conflict resolution tools based on the principles of nonviolence." DOGE/DOGE TO and USIP Defendants have expressly violated this mandate by terminating all employees of this Academy, eliminating all of USIP's contracting staff and systems, cutting off funding streams, and

effectively ceasing its existence.

171.    *Third*, the final decisions of DOGE and/or USIP are also "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Defendants' conduct violates the separation of powers, including the legislature's exclusive authority to make law, U.S. Const. art. I, § 1, by unilaterally ceasing statutorily mandated functions and effectively shuttering an agency that Congress has created by statute.

172.    As a result of Defendant DOGE and/or Defendant USIP's final agency action, Plaintiffs have suffered and continue to suffer irreparable harm.

### FOURTH CAUSE OF ACTION
### *Ultra Vires* Action by Federal Employees
### (Against Defendants Gleason, Cavanaugh, Jackson, Rubio, Hegseth, and Garvin)

173.    Federal courts possess the power in equity to grant equitable and injunctive relief "with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015); *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949) (equitable relief available against federal officials who act "beyond th[e] limitations" imposed by federal statute).

174.    Defendants Gleason, Cavanaugh, Jackson, Rubio, Hegseth, and Garvin, as individual federal employees in their official capacities as acting Administrator of DOGE, acting president of USIP, and *ex officio* Board Members of USIP, have acted unlawfully and exceeded the scope of their statutory authority, and violated constitutionally mandated separation of powers.

175.    These Defendants do not have the power to "cease [USIP's] corporate activities" or dissolve it. 22 U.S.C. § 4603(b); *id.* § 4604(a) (all powers except section 5(o) of the District of Columbia Nonprofit Corporation Act); Pub. L. No. 87-569, 17 Stat. 265, 268 (Aug. 6, 1962).

They also do not have the power to disregard the Gandhi-King statutory edict to create and operate a professional development training initiative on conflict resolution tools based on the principles of nonviolence.

176.    As a result of these Defendants' actions, Plaintiffs have suffered and continue to suffer irreparable harm.

**FIFTH CAUSE OF ACTION**
**Violation of the Separation of Powers/*Ultra Vires***
**(All Defendants)**

177.    Plaintiffs have an implied right of action under the Constitution to challenge governmental action that violates the separation of powers. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010).

178.    The power to make law resides exclusively with the legislative branch. U.S. Const. art. I, § 1.

179.    The Constitution vests executive power in the President, U.S. Const., art. II, and imposes on the President a duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

180.    The President and Executive Branch have no constitutional power to unilaterally enact, amend, or repeal parts of duly enacted statutes. *Clinton v. City of New York*, 524 U.S. 417, 438-39 (1998).

181.    Congress exercised its Article I legislative authority to create USIP as an independent nonprofit entity. Congress has also exercised its Article I legislative authority to mandate that USIP carry out specific functions. Defendants' actions unlawfully usurp Congress's legislative authority and are therefore *ultra vires*.

182.    Therefore, Defendants' actions were taken without legal authority and are *ultra*

*vires*.

183.    As a result of these Defendants' actions, Plaintiffs have suffered and continue to suffer irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter each of the following forms of relief:

a.    Issue a temporary restraining order to (1) enjoin USIP, the Endowment of USIP, USIP's Board, and USIP's officers from transferring any assets outside of USIP or the Endowment for USIP; (2) enjoin USIP, USIP's Board, and USIP's officers from any new termination of USIP employment or contracts; (3) restore all USIP employees terminated since March 14, 2025 to their prior roles on paid leave status so that they can obtain the health insurance, immigration, and other collateral benefits of employment while this litigation unfolds; (4) enjoin Defendants from publishing and/or disclosing any information pertaining to the identify of current and former employees, grantees, program partners, contractors, or PSCs;

b.    Declare that USIP's Board and officers as of March 14, 2025 are the lawful Board members and officers of USIP;

c.    Declare that all action taken by Defendants following the removal of USIP Board members violated the Administrative Procedure Act, was *ultra vires*, and violated the separation of powers;

d.    Declare that USIP and its Endowment are the lawful owners of the USIP headquarters building at 2301 Constitution Ave NW;

e.    Award Plaintiffs nominal damages;

f.    Award Plaintiffs reasonable fees, costs, expenses, including attorneys' fees; and

g.    Grant such other relief as this Court deems necessary, just, and proper.

Dated:        April 14, 2025

EMERY CELLI BRINCKERHOFF              ALI & LOCKWOOD LLP
ABADY WARD & MAAZEL LLP

   /s/ Daniel M. Eisenberg                          /s/Kathryn Ali
Andrew G. Celli, Jr.*                            Kathryn Ali
Daniel M. Eisenberg                              Elizabeth Lockwood
Rachael Wyant*                                   Meghan Palmer

One Rockefeller Plaza, 8th Floor                501 H Street NE, Suite 200
New York, New York 10020                         Washington, D.C. 20002
(212) 763-5000                                   (202) 651-2475

acelli@ecbawm.com                                katie.ali@alilockwood.com
deisenberg@ecbawm.com                            liz.lockwood@alilockwood.com
rwyant@ecbawm.com                                meghan.palmer@alilockwood.com

*Attorneys for Plaintiffs*                        *Attorneys for Plaintiffs*


*Application for admission pro hac vice forthcoming.*