# Exhibit F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SASHA PIPPENGER, et al.,

    Plaintiffs,

-against-

UNITED STATES DOGE Service, et al.,

    Defendants.

**DECLARATION**

## DECLARATION OF SASHA PIPPENGER

I, Sasha Pippenger, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. Until my sudden termination on March 28, 2025, I served as the Director of Peace Processes at the United States Institute of Peace (USIP), overseeing the team responsible for international mediation, negotiation, dialogues, ceasefires, and reconciliation.

3. The Peace Processes team constituted one of the four components of USIP's Gandhi King Global Academy ("GKGA"), a center set up in 2022 at the instruction of Congress to honor the legacies of Martin Luther King, Jr. and Mahatma Gandhi. The GKGA ensures that their contributions to nonviolent peacebuilding are preserved and disseminated by USIP. In its legislation, Congress enumerates specific functions that the GKGA is to carry out. In my role as the Director of Peace Processes, I led and oversaw initiatives ranging from transitional justice support to the implementation of Colombia's peace agreement; the design of strategic exercises on post-conflict stabilization for forward-deployed U.S. Marine Corps brigades in the Middle

1

East; foreign policy simulations for Members of Congress; and trainings on mediation for the Diplomatic Academy of Vietnam. I also provided direct technical and drafting support to peace processes around the world.

4. As part of my work for USIP, I traveled to Ukraine, Jordan, Egypt, South Africa, Qatar, Oman and Vietnam. This travel was clearly non-governmental in nature. I had no diplomatic passport and arranged my own business visas. I was neither subject to – nor benefited from – the security protocols and safeguards that apply to U.S. government workers in these countries. I engaged widely with foreign officials and civil society on these trips, and none of those interlocutors understood me to be representing the U.S. government.

5. I held the role of Director of Peace Processes at USIP for two years. Prior to joining USIP, I spent more than a decade living and working on the frontlines of peace processes in some of the world's most volatile conflict zones, including Yemen, Syria, Pakistan, and Sudan. During that time, I worked for the United Nations, including two years with the United Nations peacekeeping mission in the Central African Republic, and three years on the Syrian peace process.

6. I received my Juris Doctor degree from Harvard Law School, a certification in transnational law from the University of Geneva, and a Bachelor's degree in Peace and Conflict Studies from the University of California, Berkeley.

7. I have spent the entirety of my career trying to make contributions to peace in intractable armed conflicts around the world.

8. On Monday, March 17, 2025, USIP staff lost access to their computer systems and were unable to complete their GKGA functions. To my knowledge, all USIP programming ceased.

9. On Friday, March 28, 2025, the 33 members of the GKGA staff were terminated, leaving no qualified staff member in place at USIP to deliver on the GKGA's specific teaching and training functions mandated by Congress.

10. The mass firing that day wiped out at least 265 staff members, the near totality of USIP's workforce. Around 9:00pm that Friday evening – with no prior warning – colleagues began receiving termination letters to their personal email accounts and even via WhatsApp. The stream of terminations continued for several hours, sent in alphabetical order. Mine arrived at 11:39 PM. It informed me that my employment with the United States Institute of Peace was over, effective immediately. As a result, my health insurance—provided through my employer—would end one business day later, on March 31, 2025.

11. I have ankylosing spondylitis —a serious, incurable autoimmune disease— for which I am treated with a costly drug infusion that I need to receive every six weeks without lapses, in addition to other prescription medications necessary for my health and daily functioning.

12. If I experience a lapse in treatment, I face a significant medical risk of developing antibodies to the medication. If this occurs, I would become permanently resistant to this specific drug, rendering it ineffective and eliminating a critical treatment option for the rest of my life.

13. I cannot simply switch to another health insurance provider without advance notice, because doing so would require going through a new prior authorization process for the medication. This process typically takes 4 to 6 weeks, during which time I would not be able to access the drug, and thus risk developing antibodies.

14. To prevent a lapse in treatment, I intend to pay for COBRA health insurance coverage. However, if the United States Institute of Peace is dissolved or shrinks to the point that

it no longer offers group health coverage, my COBRA coverage could end immediately—without notice—leaving me without access to a critical drug, in addition to other significant medical expenses.

15. Any lapse in insured treatment could cause delays in the delivery of the medication, which must be shipped separately for each treatment through special refrigerated delivery and is not widely available at pharmacies. In addition to possible delays in treatment, during any lapse in insurance authorizations I would also need to bear the entire cost of treatment, which costs thousands of dollars every month.

16. Losing access to this treatment would cause irreparable harm to my health. The loss would not only jeopardize my current stability, but also permanently limit my treatment options, hinder my quality of life, and cause significant financial hardship.

17. After years living in unstable environments overseas, I relocated to the United States and accepted a job at USIP so that I could pursue more intensive treatment options for a disease that has created increasing restrictions on my quality of life. I have been dismayed and distressed to see that my access to healthcare has now been more disrupted here in the United States, by the capricious nature of rushed and destructive federal decision-making, than when I lived in active warzones.

18. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Washington, District of Columbia on April 10, 2025

_____
SASHA PIPPENGER