# Exhibit H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SASHA PIPPENGER, et al., <br><br> Plaintiffs, <br><br> -against- <br><br> United States DOGE Service, et al., <br><br> Defendants. | **DECLARATION** |

**DECLARATION OF SHIRA LOWINGER**

I, Shira Lowinger, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

**My Employment History**

2. I was the Director of Grants and Contracts Administration in the Office of Finance at the United States Institute of Peace (USIP) from September 2016 until I received notice of a change in my employment status on March 28, 2025.

3. As the Director of Grants and Contracts Administration my responsibilities included managing contractual agreements between USIP and vendors and other contractors. I also managed the Memoranda of Understanding with government entities and other organizations and oversaw the procurement process and policies for USIP. In my capacity as Director of Grants and Contracts Administration, I oversaw all the work that USIP did with regard to grants and contracts, including overseas finances and procurement and contracting

work (including overseas leases, security, and travel contracts), oversight on external agreements for USIP course tuition and leasing of the building, and oversaw the Contracting Officers, Contracting Officer Representatives, and trained and certified Contracting Officer Technical Representatives.

4. USIP follows its own procurement, grant, and contracting policies rather than uniform federal policies applicable to the Executive Branch. Although the Institute often draws as a guide on Federal Acquisition Regulations for procurement and the Uniform Administrative Requirements for Federal Awards for grantmaking, it has different competition rules, thresholds, and terms and conditions that reflect its unique status and non-profit best practices.

5. From September 2024 through February 2025, I also served as the Acting Vice President of Finance until a new Chief Financial Officer was brought on board. As the Vice President of Finance, I oversaw USIP's accounting, budgeting, and contracting functions, providing advice to USIP leadership based on the financial well-being of USIP.

6. My responsibilities also included ensuring accuracy and compliance with financial regulations and standards and organizational goals. I worked with USIP's Executive Vice President and the Board Audit and Finance Committee to identify financial risks and develop strategies to mitigate them. I also coordinated with external auditors and managed the audit processes, oversaw and helped improve financial management operations and support related to USIP offices and presences around the world, worked with Human Resources on matters related to staff planning, position control, payroll, and contracted staff, coordinated with the security team on vetting and support for staff tracking, and lead coordination with Facilities and Information Technology teams on identifying, tracking, and planning for major investments in systems, equipment, and technology as well as capital repair and replacement.

7. I have studied and worked in the field of international relations for the past decade.

8. In 2005, I obtained my Master's degree from American University's School of International Service, which focused on international security. This was a continuation of my undergraduate studies in international relations and psychology at Syracuse University.

9. In 2006 I accepted a position with USIP's Grants and Fellowship Program. I left USIP in 2011 to serve as a consultant with the Stockholm International Peace Research Institute (SIPRI) to help establish a SIPRI office in Washington, D.C.

10. In 2012, I accepted a position with American University's Office of Sponsored Programs, where I served as a Senior Grants and Contracts Manager for almost four years.

11. In November 2015, I rejoined USIP as a Senior Grant and Contract Specialist, in the Office of Finance within USIP's Management Services Department. By August 2016 I was promoted to be USIP's Director of Grants and Contracts Administration.

**Harm to USIP Contractors and Contractual Relationships Following March 28, 2025**

12. On the evening of Friday, March 28, 2025, my position—and the position of all of USIP's Contracting Officers—were suddenly terminated. Prior to DOGE's takeover of the Institute, USIP had contractors in 63 countries around the world, including Nigeria, Libya, Thailand, El Salvador, Pakistan, Tunisia, and Colombia. The total volume of contractual obligations active as of March 21 was $65.7 million.

13. Due to these terminations there is a high likelihood of the following harms.

14. First, there are no qualified USIP contracting staff to manage and vet USIP contracts. There are no qualified staff to assess the legitimacy of the closeout costs associated with terminating any USIP contract.

15. Second, many of USIP's contractors, which are not located in the United States and/or are reliant on their agreements with USIP, require "advances" before work may begin. An "advance" means fronting certain payment to the contractor. As of March 21, 2025, USIP had issued roughly 56 advances that combined equaled $1,482,535.57. Summary and surprise termination of all USIP contracting staff makes it impossible for USIP to conduct thorough and proper reconciliation between these advances and the deliverables received to ensure taxpayers funds were spent properly.

16. Third, USIP Contractors who have not been terminated continue to provide services to USIP with no guarantee of payment. To the best of my knowledge, as of today some invoices are over 30 days late, meaning USIP is in breach of contract with many vendors, including USIP computer systems design consulting firm, legal services, and videographer services, with some contractors continuing to be asked for work—such as providing lists of data or provision of access to systems—without guarantee of payment. Other contractors have privately owned materials and equipment within the USIP headquarters in Washington, D.C., that USIP cannot lawfully withhold from them.

17. Fourth, USIP maintains a physical presence (i.e., leases space, has support staff, or contractors on the ground) in twenty-six countries outside of the United States. USIP has seven field offices where it both leases space and maintains staff on the ground. These offices are located in Nigeria, Thailand, Colombia, El Salvador, Pakistan, Tunisia, and Libya, and contain sensitive information about USIP workers and operations.

18. Fifth, USIP retains legal services related to USIP staff immigration concerns. If these contracts are summarily terminated, those employees who receive immigration legal services could be impacted and their immigration cases could be jeopardized.

19. Sixth, there is a risk of mismanagement of USIP's computer systems, which contain sensitive, important, and legally required information, including employee information, vendor information, all of USIP's research and educational materials, including those developed and used in USIP's online global academy, documentation for intellectual property purposes, and documentation to support Institutional Review Board standards for research using human subjects. Improper release of information, including names, personal information, and banking information, could harm and even endanger USIP staff, contractors, and human subject participants, especially those located abroad in insecure areas, who may be targeted by terrorist groups or other bad actors. The deletion of all current and historical employee and vendor information would render it extremely difficult to restart work in the future, as all these records are kept electronically.

20. Seventh, USIP stores an archive hardcopy of organizational documents in the building and in a storage facility. If documents are deleted or if the contract with the storage facilities is terminated, decades of historical documents could be lost and may never be able to be recovered.

21. Eighth, USIP's computer system contains decades of research and educational materials which are USIP's intellectual property and documentation supporting this claim of intellectual property, such as author agreements. This includes but is not limited to educational courses and other materials used in USIP's online global academy, and student lists. The loss of this intellectual property documentation would render USIP unable to use, distribute, or sell these texts in the future, which would harm USIP's ability to carry out part of its core mission, which is education and training.

22. Ninth, USIP carries out extensive research that often contains human subjects. In order to publish its research, USIP must have approval from an Institutional Review Board (IRB). This approval is contingent upon USIP's maintenance of documentation proving that human subjects were not harmed in the course of the research. The deletion or misuse of this documentation from USIP's computer systems could cause USIP to be in violation of the IRB's human subject standards and could not only result in an inability to publish and use its research in the future but could open USIP up to litigation risk from these human subjects, all of which would forever damage USIP's reputation as a research institution.

23. Tenth, USIP maintains documentation regarding its operations and use of funds in its computer systems, which are required for audits of the organization. Loss of access to these materials, which are only kept electronically, would prevent USIP from fulfilling its Endowment tax reporting obligations as well as its statutorily mandated requirement to report its annual audits to Congress and the President of the United States. Even if the computer systems are not deleted, summary layoffs of all USIP contracting staff jeopardizes USIP's ability to conduct a proper financial audit.

24. It is my strong belief that the decision to terminate the majority of USIP employees and contractors is extremely harmful to USIP and its personnel, and has resulted in irreparable consequences for USIP's operations, legal protections, and the safety and financial security of USIP's employees, contractors, and research subjects—and the imminent threat of additional irreparable harm.

**Loss of My Health Benefits**

25. I received notice on Friday March 28 at 10:58 p.m. that my employment was to conclude immediately. The letter stated, "your health benefits will continue through March 31,

2025." It did not provide any guidance on our health flex spending account and dependent care account with the contracted provider Flores. Due to insufficient notice, I and many staff were not able to make use of the benefits available to us and lost in many cases thousands of dollars.

26. The abrupt termination of my employment, and the events that have been publicly reported which immediately precipitated it, such as the forced entry by DOGE personnel onto USIP's campus via law enforcement—has weighed heavily on my family, exacerbating my child's diagnosed school-based anxiety and forcing him to reduce the number of hours he can be in school.

27. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Washington, District of Columbia on April 10, 2025

/s/ Shira Lowinger

SHIRA LOWINGER