UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SASHA PIPPENGER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DOGE SERVICE, *et al.*,<br><br>Defendants. | Civil Action No. 25-cv-1090 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM AND ORDER**
**DENYING TEMPORARY INJUNCTIVE RELIEF**

Seven plaintiffs, who include former employees, program partners, a current personal services contractor, and a donor of the U.S. Institute of Peace ("USIP"), sued the U.S. DOGE Service ("DOGE"), several DOGE (or DOGE-affiliated) officials (including the current President of USIP, Nate Cavanaugh), the existing *ex officio* members of USIP's Board of Directors, President Trump, White House staffer Trent Morse, the Office of Personnel Management, the General Services Administration ("GSA"), the Department of State, as well as USIP itself (collectively, "defendants"). Am. Compl. ¶¶ 6-30, ECF No. 9. Their claims arise out of the same set of alleged facts at issue in *U.S. Institute of Peace v. Jackson*, No. 25-cv-804, namely, President Trump's termination of USIP's appointed Board members, the replacement of USIP's president by three remaining *ex officio* members, the subsequent transfer of USIP's headquarters and other assets to GSA, the termination of the majority of USIP's employees, and broad termination of its contracts and programming. *See generally* Am. Compl.; Am. Compl., *USIP v. Jackson*, 25-cv-804, ECF No. 12. As in the prior related case, plaintiffs here allege that USIP "is an independent non-profit organization" not subject to executive branch control. Am. Compl. ¶¶ 1, 32, 136 (describing USIP as an "independent nonprofit corporation"); Am. Compl.

1

¶¶ 1, 6, 30, 75, 77, *USIP v. Jackson*, 25-cv-804.  Plaintiffs assert, in five claims, that defendants acted *ultra vires* and in violation of the USIP Act's statutory removal protections when removing USIP's former Board members, Am. Compl. ¶¶ 135-44, 156-72 (Counts 1, 3), that they violated the APA by acting arbitrarily and capriciously when seizing control of USIP assets, *id*. ¶¶ 145-55, (Count 2), that they violated the APA by attempting to cease USIP's activities and effectively shut it down, *id*. ¶¶ 156-72 (Count 3), that they acted *ultra vires* and violated the USIP Act and other statutory mandates in doing the same, *id*. ¶¶ 173-76 (Count 4), and that they violated separation of powers by engaging in all of these acts, *id*. ¶¶ 177-183 (Count 5).

Plaintiffs moved for a temporary restraining order ("TRO") on April 14, 2025, seeking an injunction directing a host of actions by defendants, including: (1) prohibiting (a) USIP, its Endowment, its Board, and its officers from transferring any assets out of USIP or the Endowment; (b) USIP, its Board, and its officers from terminating any further employees, personal service contractors, or contracts; (c) defendants from publishing or disclosing the identity of any current or former employees, grantees, program partners, or personal service contractors; (2) restoring all terminated USIP employees and personal service contractors to their roles in a paid leave status so they can retain their benefits during litigation; and (3) transferring ownership of USIP's headquarters—which were previously transferred by defendant Cavanaugh, as president of USIP, to GSA—back to USIP.  Pls.' Mot. for TRO ("Pls.' Mot.") at 14, ECF No. 11; Pls.' Proposed Order, ECF No. 11-18.  Plaintiffs also requested that the TRO include declarations that the former Board members were terminated unlawfully and that all subsequent actions after removal of those Board members were *ultra vires*, violated the APA, and violated separation of powers.  *See* Pls.' Proposed Order.  Defendants opposed.  *See* Defs.' Opp'n, ECF No. 18.

After providing an opportunity for defendants to submit briefing explaining their opposition to plaintiffs' claims, *see* Minute Order (Apr. 14, 2025), this Court held a hearing on the motion for a TRO on April 16, 2025.  In response to the Court's queries about the scope of the requested relief, plaintiffs requested an opportunity to supplement their papers in support of a more limited TRO, and after the hearing, plaintiffs timely filed a new proposed order, narrowing their request for relief.  *See* Pls.' Notice Following Hr'g, Amended Proposed Order, Ex. A, ECF No. 21-1.  Specifically, plaintiffs no longer request the inclusion in the TRO of any declarations, nor an injunction barring the publication or disclosure of identities of people affiliated with USIP and termination of any USIP employees or contracts (apart from personal service contractors, whose termination plaintiffs still wish to be enjoined), nor an injunction requiring the transfer of USIP headquarters back to USIP.  They narrowed their request regarding future property transfers to an order prohibiting transfers of USIP assets to GSA or the Department of the Treasury.  Defendants timely filed their response to plaintiffs' supplemental submission earlier today.  *See* Defs.' Resp. to Pls.' Notice Following the Hearing on the TRO, ECF No. 22.

Upon consideration of the current record, the parties' initial and supplemental submissions and arguments presented at the TRO motion hearing, plaintiffs' motion is denied for the reasons explained below.

I.      **LEGAL STANDARD**

For a TRO to be granted, a plaintiff must demonstrate the following: (1) the plaintiff is likely to succeed on the merits of its claims; (2) the plaintiff is likely to suffer irreparable harm without the TRO; (3) the balance of the equities favors issuance of the TRO; and (4) the issuance of a TRO is in the public interest.  *Ramirez v. Collier*, 595 U.S. 411, 421 (2022) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)).  When the government is the opposing party,

the final two factors, the balance of the equities and the public interest, merge into one. *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020).

The likelihood of success on the merits factor is the most important, and absent such a showing, relief should be denied. *See, e.g.*, *Greater New Orleans Fair Hous. Action Ctr. v. U.S Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1088 (D.C. Cir. 2011) ("When a plaintiff has not shown a likelihood of success on the merits, there is no need to consider the remaining factors."); *Hanson v. District of Columbia*, 120 F.4th 223, 242-43 (D.C. Cir. 2024) ("[W]e hold [appellant] is not sufficiently likely to succeed on the merits of his claim to warrant the entry of a preliminary injunction against enforcement of the [law].").

To show a likelihood of success on the merits, and for the Court to have jurisdiction over plaintiffs' motion, plaintiff must also demonstrate that plaintiff has standing. "In the context of" temporary injunctive relief, the plaintiff must "show a substantial likelihood of standing under the heightened standard for evaluating a motion for summary judgment," thus requiring more than mere allegations. *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912-13 (D.C. Cir. 2015)) (describing the standard for a preliminary injunction). Standing requires "(1) . . . a 'concrete and particularized' injury (2) that is 'fairly traceable to the challenged action of the defendant' and (3) that is 'likely' to be 'redressed by a favorable decision.'" *Id.* at 376-77 (quoting *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017)).

## II.    DISCUSSION

At the outset, the purpose of a TRO is not to decide which party will prevail or lose the case. That assessment comes later when the factual record and legal arguments of the parties are fully developed and the Court has time for thorough consideration. The purpose of a TRO is to

preserve the status quo while the merits of the case are considered. *See Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, --F. Supp. 3d --, No. 25-cv-239 (LLA), 2025 WL 314433, at *2 (D.D.C. Jan. 28, 2025) (citing *MGU v. Nielsen*, 316 F. Supp. 3d 518, 520 (D.D.C. 2018)) (involving a TRO); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (involving a preliminary injunction). Still, restraining parties in ongoing litigation, even temporarily, from going about their business requires that the party seeking the TRO meet the significant thresholds for obtaining such "extraordinary" relief. *Winter*, 555 U.S. at 24.

The events at USIP over the past two months—involving sudden change of leadership, mass terminations of employees conducted in alphabetical order with no forewarning, the transfer of USIP's headquarters and other property, and termination of contracts and programming—undoubtedly wreaked havoc on the lives of people affiliated with USIP in numerous capacities. For plaintiffs' TRO to be granted, however, plaintiffs must demonstrate they are likely to succeed on a specific legal claim, and that claim must involve conduct by the defendant that *caused* or will cause a cognizable injury experienced by plaintiffs that can be redressed by this Court through the relief requested. The mismatch here between the harms experienced by plaintiffs, the allegedly unlawful acts challenged, and the requested forms of relief—even in the more limited amended order proposed by plaintiffs—forecloses such a favorable conclusion in this preliminary posture.

First, plaintiffs argue that President Trump illegally removed USIP's appointed Board members. Pls.' Mot. at 14; Am. Compl. ¶¶ 135-44 (Count One). That claim has been twice brought before this Court in an emergency posture and the relief denied, given the complexity and novelty of that claim. *See USIP v. Jackson*, No. 25-cv-804, Min. Orders (Mar. 19, 2025, and Apr. 1, 2025). Both sides present strong arguments supporting their divergent views of the

nature of USIP. This is no trivial legal dispute, given the number of other entities with similar or analogous structures and claims of independence from executive branch control, at least for certain purposes. *See, e.g.*, Pls.' Mot. at 18 (referencing *Dong v. Smithsonian Institute*, 125 F.3d 877 (D.C. Cir. 1997), which held that the Smithsonian Institute is not an establishment of the executive branch for one purpose); Defs.' Opp'n at 13 (citing *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), which held that Amtrak is part of the federal government for purposes of a First Amendment claim).

For its part, defendants argue that USIP "is plainly an Executive Branch agency." Defs.' Opp'n at 9. To support this argument, defendants point out that USIP was "established" in a federal statute by Congress, with its authority vested in a Board of Directors appointed by the President (including three *ex officio* members, the Secretary of State, the Secretary of Defense, and the president of the National Defense University). Defs.' Opp'n at 3, 10-11 (citing 22 U.S.C. §§ 4603(a), 4605(a)-(b)). USIP is funded largely by Congress, 22 U.S.C. §§ 4609(a), 4604(h), and like other federal agencies, USIP is required to publish certain notices in the Federal Register, *id.* § 4605(h)(3), is subject to Freedom of Information Act ("FOIA"), *id.* § 4607(i), and its employees subject to the Federal Tort Claims Act ("FTCA"), *id.* § 4606(f)(1), and statutory provisions for federal government benefits, including, *e.g.*, workers compensation, civil service retirement, federal life insurance, and federal health insurance, *id.* Defs.' Opp'n at 3-4, 10-11. Further, defendants emphasize that the Office of Management and Budget has long designated USIP as a federal entity, pursuant to the Inspector General Act of 1978, Defs.' Opp'n at 11-12 (citing 5 U.S.C. § 415(h)), and that other federally created entities with nongovernmental features, like Amtrak, have been found to be part of the government for constitutional purposes, *id.* at 13 (citing *Lebron*, 513 U.S. at 399). USIP also conducts,

defendants insist, core executive branch foreign policy activities—exercising "soft power to enhance its diplomacy and foreign relations and attempt to obviate the need for military action." *Id.* at 15. By defendants' reasoning, USIP's Board, which is presidentially appointed, is therefore subject to the President's Article II removal authority, and because USIP exercises such core executive power, as opposed to quasi-legislative or quasi-judicial authority, the narrow exception to the President's constitutional authority to remove his subordinates presented by *Humphrey's Executor v. United States*, 295 U.S. 602 (1935) and *Wiener v. United States*, 357 U.S. 349 (1958), does not apply. Defs.' Opp'n at 19-21. Thus, defendants conclude, the USIP Act's limitations on the President's unilateral power to remove USIP's Board members are invalid and void, and that the removal of USIP Board members was lawful.

In contrast, plaintiffs argue that USIP is an entirely independent nonprofit corporation not subject to Article II. *See* Pls.' Mot. at 15-22. Congress established USIP as an "independent nonprofit corporation," characterized it as a charitable organization under the tax code, and provided that its officers and employees are not federal officers or employees except for limited purposes, so USIP is not a government entity, according to plaintiffs. Pls.' Mot. at 17 (citing 22 U.S.C. §§ 4603(b), 4604(a), 4606(f)(1)). Plaintiffs acknowledged the complexity of this issue at the hearing, briefly offering a theory of entities on a "continuum" from "wholly independent entities" to "something like the Red Cross or Girl Scouts" to the "Department of State," and put USIP in the middle category, but plaintiffs did not offer that argument in their papers or expound on that theory at the hearing, by, for example, explaining the statutory difference "between a charter versus an establishment of an entity," instead proposing to wait until summary judgment briefing. Rough Draft Hr'g Tr. at 93:1-94:5. Plaintiffs also reason that USIP is not part of the executive branch, in particular, and discount the fact that USIP is explicitly made subject to

7

FOIA and the FTCA by contending this is necessary only because the entity is not automatically subject to these laws as an executive agency. *Id.* Plaintiffs also differentiate USIP's function from executive powers, noting that USIP does not enforce laws, issue rules, or implement any statute, and does not represent the U.S. government when interacting with foreign groups. *Id.* at 17-18.

Even if USIP were an executive branch agency, however, plaintiffs urge that, under *Humphrey's Executor* and *Wiener*, for-cause removal protections on USIP's multimember, partisan-balanced Board are constitutionally permissible, especially in light of USIP's *de minimis* exercise of executive power. *Id.* at 19-22. The President therefore violated the law when removing USIP's Board members without cause, and, as a result, plaintiffs contend, all of the subsequent actions conducted by USIP's new leadership are *ultra vires* and void. *See* Pls.' Mot. at 16, 22, 36 ("Improper removal of the board members, and all harm to Plaintiffs that flowed from those illegal actions, were ultra vires in violation of the USIP Act.").

Given that briefing on the issue is ongoing in the *USIP v. Jackson* litigation, where Board members themselves are plaintiffs, this Court will not opine further in an emergency posture with incomplete briefing on that claim here. For the purposes of this emergency application, the Court assumes that defendant Cavanaugh, who was appointed by two of the three *ex officio* Board members remaining, Defs.' Opp'n, Ex. 3, ECF No. 18-3, is lawfully USIP's president.

Second, regarding plaintiffs' claim that the transfer of USIP's property to GSA violates the APA, plaintiffs lack standing. First Am. Compl. ¶¶ 145-55 (Count Two); Pls.' Mot. at 25-26. Plaintiffs have not shown any specific injury caused by transfer of property that can be redressed by this Court. *See Elec. Privacy Info. Ctr.*, 878 F.3d at 377-78. Plaintiffs who are former employees (or soon-to-be former employees abroad) or former program partners explain that

8

they suffer injuries involving the complexities of finding healthcare and other uncertainties regarding financial and physical security due to sudden loss of their jobs or contracts. *See* Pls.' Mot., Declarations, Exs. F-J, N-O. Those circumstances will not be alleviated if USIP recoups its headquarters building, retains its remaining property—the only property-related relief the Amended Proposed Order seeks—nor will they be worsened if USIP transfers away other assets.[1]

While the donor plaintiff likely suffered harm from USIP's disposal of its headquarters resulting in improper use of his dedicated donations, giving rise to a claim in contract or tort, that financial harm is not irreparable so as to warrant preliminary injunctive relief on this claim. *See id.*, Decl. of Chester Crocker, Donor ¶¶ 4-5, Ex. L, ECF No. 11-13.[2] In any case, the only relief requested—preventing further transfer of assets away from USIP—would not redress the donor's harm. Rather, for the donor's interests to be effectuated—*i.e.*, the specific purpose for his donations carried out—other actors (USIP's leadership) must make decisions, for instance about the use and name of a particular conference room, that this Court cannot micromanage. *See Hectate Energy LLC v. FERC*, 126 F.4th 660, 665 (D.C. Cir. 2025) (holding that redressability cannot be established when it depends on future choices by third parties "whose exercise of broad and legitimate discretion the courts cannot presume to either control or to predict").

Third, plaintiffs argue that defendants have taken specific actions that are arbitrary and capricious, unlawful, and contrary to constitutional right in an effort to shutter the agency and cease all of its activities, in violation of the APA. *See* Pls.' Mot. at 26-34; Am. Compl. ¶¶ 156-

---

[1] Plaintiffs' counsel raised the concern about plaintiffs' access to COBRA if USIP is shuttered entirely. *See* Rough Draft Hr'g Tr. at 20:14-21:12. Plaintiffs cannot demonstrate, however, that dissolution of the Institute would result from any further transfer of assets to GSA or the Treasury. That harm—related to ongoing access to health benefits—therefore would not be directly redressed by the relief sought.

[2] The same is true for the harm suffered by a contractor who left professional video equipment in the USIP headquarters. *See* Pls.' Mot., Decl. of Intermotion Media, LLC ¶ 13, Ex. N, ECF No. 11-15.

72 (Count Three). Reviewing each of plaintiffs' challenged actions, none constitutes a violation on this record. *See* Am. Compl. ¶ 163. Regarding the termination of staff and their benefits, plaintiffs argue that around 300 of USIP's 400 employees were terminated in a single day and defendants announced termination of the rest in May, which amounts to an effective shutdown of the Institute in violation of acts of Congress establishing USIP and requiring certain programs. *See* Pls.' Mot. at 29-30; Rough Draft Hr'g Tr. at 60:18-21; 22 U.S.C. § 4603(a) (establishing the Institute); Gandhi-King Scholarly Exchange Act Initiative, Pub. L. 116-260, 134 Stat. 3114 (2020). Defendants, to the contrary, insist that USIP "while reduced, continues to perform functions required by statute." Defs.' Opp'n at 31. A factual dispute exists as to whether USIP can do so in its current situation. While plaintiffs raise legitimate doubts that USIP's current leadership, at USIP's current gutted staffing levels, has the expertise, resources, and partnerships necessary to effectuate USIP's statutory mission, no clear violation of its congressional mandates, is so far apparent. Defendants could be hiring new staff or taking other efforts to meet their obligations.[3] Nor have plaintiffs demonstrated that the mass terminations were arbitrary and capricious, given current leadership's stated goals of reducing USIP to its core functions and promoting efficiency. *See* Pls.' Mot., Letter from Cavanaugh, Ex. C, ECF No. 11-5; Executive Order 14217 ("EO 14217") § 1, 90 Fed. Reg. 10577, 10577 (Feb. 19, 2025).

With respect to defendants' abrupt cancellation of USIP contracts, *see* Pls.' Mot. at 28-29, a recent *per curiam* opinion by the Supreme Court may deprive this Court of the authority to consider claims sounding in contract or to enjoin further termination of contracts, even if they are styled as APA claims. In *Department of Education v. California*, 145 S. Ct. 966 (2025), the

---

[3] At summary judgment, defendants will have to demonstrate they are in fact successfully doing so and not reducing USIP to a shell in name-only.

Supreme Court construed as an appealable preliminary injunction a district court order that enjoined the government from terminating various education-related grants after a finding of plaintiffs' likelihood of success on their APA claims. *See id.* at 968. Despite acknowledging that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds," *id.* at 968 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)), the Supreme Court nonetheless concluded that the district court "lacked jurisdiction to order the payment of money under the APA" because "the Tucker Act grants the Court of federal Claims jurisdiction over suits based on 'any express or implied contract with the United States,'" *id.* (quoting 28 U.S.C. § 1491(a)(1)). This holding appears in tension with the D.C. Circuit's approach in *Crowley Government Services, Inc. v. GSA*, 38 F.4th 1099, 1105-13 (D.C. Cir. 2022), but in this preliminary posture with incomplete briefing presented in short form after the TRO hearing when raised by the Court, plaintiffs have not sufficiently distinguished the Supreme Court's new holding to warrant a finding of likelihood on the merits. *See* Pls.' Notice Following Hr'g at 2.[4]

In any case, the only relief related to contracts that plaintiffs seek is an order ceasing further termination of personal services contractors—individuals who are effectively employed by the Institute on a contractual basis. *See* Amended Proposed Order. Plaintiffs have not, at this juncture, provided specific detail about the nature of these contracts and how such an order would not effectively "enforce a contractual obligation to pay money." *Dep't of Educ.*, 145 S.Ct. at 968.

---

[4] Plaintiffs suggest that *Department of Education v. California* might be inapposite, given that USIP is an independent nonprofit without sovereign immunity, 22 U.S.C. § 4604(k), and thus the Tucker Act might not apply. *See* Pls.' Notice Following Hr'g at 2 n.1. Defendants respond that "a waiver of sovereign immunity" is not the same as "the scope of the Court's jurisdiction," and "[f]or claims sounding in contract, jurisdiction generally lies exclusively in the United States Court of Federal Claims." Defs.' Resp. to Pls.' Notice at 2 n.1. Regardless, in this preliminary posture, this Court will not decide the nature of USIP, and plaintiffs have not provided sufficient explanation of the inapplicability of the Tucker Act to demonstrate likelihood of success on the merits.

Plaintiffs also challenge the apparent dissolution of the Gandhi-King Academy, through the firing of USIP's staff tasked with work on the Academy, as arbitrary and capricious and in violation of the statute requiring its formation. Pls.' Mot. at 34. Yet, plaintiffs do not have standing to challenge this apparent act because they lack harm directly traceable to it, as opposed to their individual termination or termination of specific contracts. *See Elec. Privacy Info. Ctr.*, 878 F.3d at 376-77; Pls.' Mot., Decl. of Sasha Pippenger ¶¶ 3, 10-17, Ex. F, ECF No. 11-8 (describing her former role on a team that was one of four components of the Gandhi King Global Academy and describing harm resulting from her termination and loss of employment benefits rather than directly from dissolution of that program). Even so, plaintiffs have not demonstrated on this record that the Academy has been forever eliminated in contradiction to the statutory mandate and that defendants do not have alternative plans for meeting those statutory requirements.

Plaintiffs also refer to defendants' shutdown of the USIP website, rendering its electronic resources inaccessible. Pls.' Mot. at 28-29; Am. Compl. ¶ 163. Again, however, plaintiffs have not demonstrated concrete or particularized harm from this action or requested any specific relief that would remedy such harm. Finally, plaintiffs refer to defendants' threats to wind down all programs and grants, Am. Compl. ¶ 163, but a threat of that sort is not a final agency action ripe for this Court's review, nor does it constitute an *ultra vires* act in violation of a statute. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). All of these challenges to agency actions, therefore, are either improperly before this Court based on the particular plaintiffs suing and the relief requested, or not unlawful on the present record.

Fourth, plaintiffs allege that efforts to cease all of USIP's corporate activities are *ultra vires*, beyond defendants' authority, and violative of the USIP Act and the Gandhi-King

Initiative Act. *See* Pls.' Mot. at 35; Am. Compl. ¶¶ 173-76 (Count Four). For the reasons previously described, plaintiffs have not described concrete, particularized harm from all of these actions—apart from their individualized terminations which do not themselves violate the statutes—that this Court can remedy. Moreover, even putting all of defendants' actions together, plaintiffs have not demonstrated that defendants have actually gone so far as to decimate USIP to make achievement of its statutory mandates impossible.

Fifth, plaintiffs allege a violation of separation of powers and *ultra vires* action because defendants have violated the Take Care Clause in not carrying out the mandates of USIP's statute. *See* Pls.' Mot. at 36; Am. Compl. ¶¶ 177-83, U.S. CONST. art II, § 3. While plaintiffs also argue that President Trump violated separation of powers in flouting Congress's removal protections when terminating USIP's Board members, that issue is only one part of this claim, given that *whoever* is leading USIP *must* carry out the USIP Act and any other congressional statute guiding USIP's purpose and activities. *See* Pls.' Mot. at 36. To be sure, the executive branch cannot unilaterally shut down USIP—that would violate the executive branch's Take Care obligation to establish the entity and implement its statutory functions. *See* 22 U.S.C. § 4604(a) (giving USIP the powers of a D.C. nonprofit corporation, except for the power to dissolve itself); *see also In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 551 (D.C. Cir. 1999) ('Needless to say, the President is without authority to set aside congressional legislation by executive order."). The record does not support a finding, let alone demonstrate, however, that defendants have done that—at least yet. Defendant Cavanaugh espouses a relatively broad view of how USIP is required to operate, *see* Letter from Cavanaugh at 2, Ex. C (citing 22 U.S.C. § 4604(b)(1)-(10)). If USIP can accomplish all of those statutory goals, *see id.*, the challenged actions would not violate the separation of powers in the respect of unlawfully

13

shuttering the Institute. Whether USIP actually can do so remains to be seen and will be scrutinized at summary judgment.

Given plaintiffs' failure to demonstrate likelihood of success on the merits of any of their claims, no temporary injunctive relief is warranted and the other factors need not be considered. *See Greater New Orleans Fair Hous. Action Ctr.*, 639 F.3d at 1088.

### III. ORDER

Plaintiffs' motion for TRO, ECF No. 11 is **DENIED**; it is further

**ORDERED** that the parties jointly submit, by 3:00 PM on April 18, 2025, a briefing schedule for expedited dispositive motions that adheres as closely as practicable to the briefing schedule in *USIP v. Jackson*, No. 25-cv-804.

Date:  April 17, 2025

_____
**BERYL A. HOWELL**
United States District Judge